COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Chaney and Lorish
Argued at Lexington, Virginia

MELROSE ATHLETIC CLUB, INC.

v.      Record No. 0469-24-3

CITY OF ROANOKE, VIRGINIA,
 A MUNICIPAL CORPORATION

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 4, 2025

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

John S. Koehler (Christopher M. Di Risio; The Law Office of James
Steele, PLLC, on brief), for appellant.

David L. Collins, Deputy City Attorney (Timothy R. Spencer, City
Attorney, on brief), for appellee.


Melrose Athletic Club, Inc. appeals the trial court's order granting the City of Roanoke

possession of a commercial building that Melrose had been leasing from the City. Melrose

argues that its three-year lease with the City automatically renewed because the City did not

provide timely notice of nonrenewal. We agree with the trial court that no notice was required

because the lease was for a definite term and the City did not seek possession until the lease had

reached its natural termination. Accordingly, we affirm.

I. BACKGROUND

Following a bench trial, "we review the facts in the light most favorable to [the City], the

prevailing party below." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283

(2022).

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

In November 2019, the City passed an ordinance authorizing the city manager to lease property to Melrose for $10 per year to conduct an amateur boxing program. The parties subsequently executed a written lease agreement. The agreement stated that the lease would last for three years, "commencing on December 1, 2019, and terminating on November 30, 2022." The agreement had no provisions regarding renewal or extensions but specified that either party could terminate the lease "for any reason by giving written notice to the other party" at least 60 days in advance. Any notice was required to be in writing and "delivered personally or sent by certified mail, return receipt requested."

In July 2022, Melrose informed the City that it wanted to renew the lease. City staff told Melrose that the decision would be made by the city council and the city manager. On September 30, 2022, the City sent Melrose a letter by first-class mail, stating that the lease would expire on November 30, 2022, and that the City had decided not to renew the agreement. The City expressed its intent to consider other proposals for the property and invited Melrose to submit a proposal, which Melrose declined to do.

When Melrose did not vacate the property on November 30, the City permitted it to stay until a new tenant could be found. In March 2023, the City offered Melrose a month-to-month tenancy. Melrose rejected the offer, claiming that the original lease agreement had renewed for three more years because the City had not provided at least three months' notice of nonrenewal, which Melrose contended was required by Code § 55.1-1410. Melrose tried to pay another three years of rent, but the City returned the check.

In June 2023, the City sent Melrose notice that it had 30 days to vacate the property. The City later sent Melrose a second notice giving it until the middle of August to vacate. When Melrose still did not leave, the City filed a summons for unlawful detainer.

Following a bench trial, the trial court found that "notice of nonrenewal was not required under the [l]ease" and that Code § 55.1-1410 did not apply because the lease was "for a fixed[]term and not a year-to-year lease." Accordingly, the court entered judgment in the City's favor and granted it possession. Melrose appeals.

## II. ANALYSIS

Appellate courts review a trial court's interpretation of a lease de novo. *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 55 (2009). "A lease is a contract and '"when the terms of a contract are clear and unambiguous, a court must give them their plain meaning."'" *Id.* (quoting *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 57 (2008)). Similarly, we review questions of statutory interpretation de novo. *Bd. of Supervisors for the Cnty. of Louisa v. Vallerie Holdings of Va., LLC*, 80 Va. App. 335, 350 (2024). "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). We determine that intent "from the plain meaning of the language used." *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)).

We first consider whether Melrose preserved its arguments for appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. An objection "must be both *specific* and *timely*." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc).

Under Code § 55.1-1413, when a nonresidential tenant for a definite term fails to vacate the premises "not due to his willfulness, negligence, or other avoidable cause," he does not automatically become a tenant for another term.  Melrose argues that its failure to leave the property "was not due to [its] willfulness, negligence, or other avoidable cause" and that "the statute clearly implies" that it thus "be held as a tenant for another term."  Melrose did not make that argument to the trial court, however, and it is therefore waived.  Melrose does not invoke any of the exceptions to Rule 5A:18, and we do not raise them sua sponte.  *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

Melrose's primary argument is based on Code § 55.1-1410(A), which provides that "[a] year-to-year tenancy in a nonresidential rental property may be terminated by either party giving three months' notice, in writing, prior to the end of any year of the tenancy."  Melrose contends that the lease agreement created a year-to-year tenancy and that the City failed to give three months' notice of nonrenewal.  Melrose made that argument below.[1]  But Melrose contradicted its own position by stating during closing argument, "[w]hile technically this is not a year-to-year lease as outlined in" Code § 55.1-1410, "it is a multi-year lease."  "[A] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."  *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)).

Regardless of whether counsel improperly reprobated, the trial court correctly determined that the lease agreement did not create a year-to-year tenancy.  "When a tenant is in possession

---

[1] The City contends that Melrose waived this argument by not specifically restating it as an objection to the trial court's ruling.  But "[f]ormal exceptions to rulings or orders of the court [are] unnecessary."  Code § 8.01-384(A).  "No party, after having made an objection or motion known to the court, shall be required to . . . make such objection or motion again in order to preserve [the] right to appeal."  *Id.*  Melrose objected to the final order "[f]or the reasons stated on the record," which included Melrose's argument that the City provided untimely notice.

under a lease for an indefinite term, . . . a periodical tenancy is thereby created . . . ." 11B Michie's Jurisprudence, *Landlord and Tenant* § 6 (2024). "Where there is an intent to create a tenancy, and *no term is fixed*, it is a tenancy from year to year, generally . . . ." *Id.* (emphasis added). But a year-to-year tenancy "can arise only where the duration of the tenancy is originally indefinite." *Crawford v. Morris*, 46 Va. (5 Gratt.) 90, 107 (1848). "If the length of the term be fixed by the contract, as where the lease is for a year, *or a certain number of years*, no notice to quit is necessary to dissolve the relation of landlord and tenant." *Id.* (emphasis added). In other words, "[w]here a term is to end on a precise day, there is no occasion for notice to quit, because both parties are apprised that unless they come to a fresh agreement there is an end of the term." *Id.* (quoting *Messenger v. Armstrong* (1785) 99 Eng. Rep. 968 (KB)).[2]

In *Crawford*, the Supreme Court held that a lease with a definite period of one year was not a year-to-year lease and that the tenant was not entitled to notice of nonrenewal beyond the termination date provided in the lease. *Id.* at 107-08. The same result is warranted here. The lease agreement between Melrose and the City did not create a year-to-year tenancy because it had a definite term of three years and terminated on a precise day. Melrose contends, without any supporting authority, that the lease was year-to-year because it "provide[d] [three] annual terms," with each "running from December 1 to November 30." But the lease's plain language did not establish three annual terms. It established one term of three years, terminating on November 30, 2022, with no provisions for automatic renewal. Therefore, the trial court

---

[2] Code § 55.1-1410 did not exist when *Crawford* was decided. Nonetheless, as now, the law in 1848 required three months' notice to end a year-to-year tenancy of property located within an incorporated town. *Crawford*, 46 Va. (5 Gratt.) at 107.

correctly determined that the City was not required to provide Melrose with notice of nonrenewal and properly granted possession to the City.[3]

### III.  CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[3] Melrose concedes on appeal that the lease's 60-day notice requirement for termination did not apply to notices of nonrenewal.  Thus, we do not address whether the September 30, 2022 letter complied with that requirement.  Nor do we address whether the City's initial decision to allow Melrose to stay until a new tenant could be found created a tenancy separate from the lease agreement, as Melrose does not make that argument.