COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia

**PUBLISHED**

TRIER LADANTE SMITH

v.      Record No. 1999-24-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
JULY 29, 2025

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Salvatore R. Iaquinto, Judge

Roger A. Whitus (Slipow & Robusto P.C., on brief), for appellant.

Rebecca Johnson Hickey, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Trier Ladante Smith ("appellant") was convicted in a bench trial of two counts of

solicitation to purchase a firearm by a person ineligible to possess a firearm, in violation of Code

§ 18.2-308.2:2(N), and two counts of possession of a firearm by a violent felon, in violation of Code

§ 18.2-308.2. On appeal, he argues that the trial court erred by convicting him because the evidence

was insufficient to prove he solicited, employed, or assisted another person in purchasing the

firearms.[1]  For the reasons that follow, we affirm the trial court's judgment.

---

[1] Although appellant's assignment of error states that "the trial court erred by convicting [him] of the charged offenses," he advances no argument on brief challenging his possession convictions. We therefore do not review those convictions in resolving this appeal. *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (noting it is "not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention . . . , the issue is waived" (quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010))).

# I. BACKGROUND

"On appeal, we recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "In doing so, 'we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor.'" *Thomas v. Commonwealth*, 82 Va. App. 80, 93 (2024) (en banc) (quoting *Camann*, 79 Va. App. at 431).

In June 2022, appellant began a relationship with Tyesha Robles. Based on his prior felony convictions, appellant was ineligible to purchase or otherwise receive or possess firearms.[2] Robles was aware that appellant was a convicted felon who "couldn't have a gun" or "be around firearms."

On August 28, 2022, while appellant and Robles were living together, Robles visited a pawnshop to purchase a firearm. She testified that the firearm was "for both of us" and "for the household" and agreed that appellant "ha[d] a hand" in her selection of the gun she purchased. Specifically, appellant "made suggestions" and "pulled it up" on a website, indicating "okay, so it's this one, this one." Appellant also went to the pawnshop with Robles, although he waited in the car while she made the purchase. Robles stated that after she bought the firearm, she did not like it because it was "too big." Appellant later told Robles that he threw the firearm, which had been in Robles' car, "into the water" because he "couldn't drive with it."

---

[2] At trial, the parties stipulated that based on his earlier convictions for robbery, conspiracy to commit robbery, and use of a firearm in the commission of a felony, appellant qualified as a person ineligible to possess or to purchase or otherwise receive a firearm, pursuant to Code §§ 18.2-308.2 and -308.2:2(N).

On November 3, 2022, Robles again went to a pawnshop to buy a firearm. On that occasion, she purchased an "AR"-style firearm while appellant waited in the car outside the shop. Robles originally had intended to buy a shotgun, but appellant "ma[d]e a suggestion" that she buy an AR "because it didn't have kickback and was easier to shoot." When asked at trial if she purchased the firearm "at [appellant's] direction because he was unable to do so," Robles replied, "[y]eah." Like the first gun purchased by Robles, the AR later disappeared. Robles stated that it was stolen from her car but eventually recovered by police in North Carolina.

With respect to both purchases, when asked whether appellant told her "which guns to pick out and purchase," Robles replied, "[y]eah, basically," and that appellant "said this one is better. . . . This one. Okay. So that's the one I got." She also said she made the purchases herself "because [appellant] wasn't allowed to. . . . He would have done it, but he can't do it." Robles stated that when she would return to the car after making a purchase, the firearm would "sit there on the floor or by [appellant]." Asked whether appellant "ever look[ed] at the gun to see, hey, did you buy the one that I suggested," Robles replied that he did. Robles further stated that prior to buying the guns, she visited the pawnshop "several times" to browse and that appellant accompanied her inside the shop on some occasions and pointed out certain firearms. She agreed that appellant "had a say in which ones [she] should get."

At the close of the Commonwealth's evidence, appellant moved to strike. He argued that the evidence was insufficient to prove Robles purchased firearms "at his behest, at his direction, for his purposes, or anything to that extent." The trial court denied the motion.

Appellant declined to present his own evidence and renewed his motion to strike. He contended that there was no "financial exchange" or "quid pro quo" between himself and Robles "to get . . . Robles to purchase these firearms," and "[s]o basically no one has been solicited, nobody's

been employed, and [appellant] didn't assist anybody because to assist would mean that he's doing it for his own benefit, and we really don't have that evidence."

The trial court denied the motion and convicted appellant of two counts of possession of a firearm by a violent felon and two counts of solicitation to purchase a firearm by a person ineligible to possess a firearm. The court found that appellant had solicited the firearms purchases, describing the circumstances as "tantamount to a minor standing outside an ABC store and asking an adult to go in and purchase alcohol for them." Additionally, the court found that appellant had assisted Robles, noting in particular "the fact that [he] actually went into the location and pointed to certain weapons and pointed out which ones would be good."

Appellant filed a motion to set aside the verdicts. Following a hearing, the trial court denied the motion.

This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in convicting him because the evidence was insufficient to prove he solicited or assisted Robles in purchasing firearms on his behalf under Code § 18.2-308.2:2(M) and (N).[3]

"In this Court's review of the sufficiency of the evidence to support a conviction, it will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to

---

[3] Appellant also challenges the sufficiency of the evidence that he "employed" Robles to purchase firearms for him. But the trial court made no finding that appellant had employed Robles; rather, the trial court found that appellant had solicited and assisted Robles in her firearms purchases. Consequently, we do not reach whether appellant "employed" Robles. *See Bailey v. Commonwealth*, 73 Va. App. 250, 264 (2021) (noting that the absence of a ruling by the trial court on an issue "leav[es] us with no decision of the [trial] court on that issue to consider on appeal"); *cf. Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) ("An appellate court can only 'determine whether or not the rulings and judgment of the court below . . . were correct.'" (alteration in original) (quoting *Jackson v. Chesapeake & Ohio Ry. Co.*, 179 Va. 642, 651 (1942))).

- 4 -

support it." *Flowers v. Commonwealth*, 84 Va. App. 143, 159 (2025). "In conducting this review, the 'appellate court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Drexel v. Commonwealth*, 80 Va. App. 720, 747 (2024) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)). "Instead, the 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Barney*, 302 Va. at 97). "[I]n determining whether the evidence was sufficient to prove the offense, 'we review factfinding with the highest degree of appellate deference.'" *Williams v. Commonwealth*, 82 Va. App. 639, 653 (2024) (quoting *Barney*, 302 Va. at 96). "This deference is owed not only to the [fact-finder's] assessment of the credibility of the witnesses but also to the inferences to be drawn 'from basic facts to ultimate facts.'" *Id.* (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). But "[t]o the extent our analysis requires us to interpret the language in a statute, we do so de novo." *Id.*

Code § 18.2-308.2:2(N) provides, in pertinent part, that "[a]ny person who is ineligible to purchase or otherwise receive or possess a firearm in the Commonwealth who solicits, employs, or assists any person in violating subsection M shall be guilty of a Class 4 felony." In turn, Code § 18.2-308.2:2(M) provides, in pertinent part, that it is a felony for any person to "purchase[] a firearm with the intent to . . . resell or otherwise provide such firearm to any person who he knows or has reason to believe is ineligible to purchase or otherwise receive from a dealer a firearm." These and other provisions of Code § 18.2-308.2:2 are "part of a statutory scheme reflecting a legislative purpose to interdict the availability and use of firearms by persons previously convicted of felon[ies]." *Mayhew v. Commonwealth*, 20 Va. App. 484, 490-91 (1995). To accomplish this purpose, "the statutory scheme prohibits the possession of a firearm by a convicted felon, Code § 18.2-308.2, the knowing sale or provision of a firearm to a

- 5 -

convicted felon, Code § 18.2-308.2:1, and the purchase of a firearm by a 'straw man' for the ultimate possession by a convicted felon, Code §§ 18.2-308.2:2(M) and (N)."[4] *Id.* at 491. As relevant here, the plain language of Code § 18.2-308.2:2(N) instructs that a violation of that statute occurs when a convicted felon "solicits, employs, or assists" another in knowingly and intentionally making a straw purchase of a firearm for him.[5]

In this case, appellant proffers dictionary definitions for "solicit" and "assist" and argues that a violation of Code § 18.2-308.2:2(N) "requires that an ineligible person approach . . . or give support or aid to another person who intends to purchase and provide a firearm to [them]." But here, appellant contends, the evidence "established only that [he] made suggestions towards purchases of firearms." Appellant asserts there was no evidence that he "took any active role in directing or assisting in the purchases," that Robles "claim[ed] she had received any benefit from [him] in exchange for purchasing the firearms," or that Robles intended to provide the firearms to appellant.[6]

Our appellate courts have not previously been required to consider and define the terms "solicit[]" or "assist[]" as used in Code § 18.2-308.2:2(N). "[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Shifflett v. Commonwealth*, 81 Va. App. 277, 289 (2024) (en banc) (alteration in original) (quoting *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023)). "[W]e must . . . assume that the legislature chose, with care, the words it used when it enacted

---

[4] *See Abramski v. United States*, 573 U.S. 169, 171 (2014) (defining "a so-called straw purchaser" as "a person who buys a gun on someone else's behalf").

[5] A violation of the statute also occurs when the straw purchase is intended for a third party, but that circumstance is not present here. *See* Code § 18.2-308.2:2(M) and (N).

[6] Appellant does not contest on appeal that the items purchased by Robles qualified as firearms for purposes of Code § 18.2-308.2:2(N). *See* Code § 18.2-308.2:2(F) (defining a firearm for purposes of the statute).

the relevant statute, and we are bound by those words as we interpret the statute."

*Commonwealth v. Canales*, ___ Va. ___, ___ (Apr. 10, 2025) (alterations in original) (quoting *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023)). Accordingly, "'[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language' and must 'give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'" *Bland-Henderson v. Commonwealth*, 303 Va. 212, 218 (2024) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). And "[i]n general, 'when a particular word in a statute is not defined therein, a court must give it its ordinary meaning.'" *Bista v. Commonwealth*, 78 Va. App. 391, 419 (2023) (en banc) (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc)), *aff'd*, ___ Va. ___ (Nov. 14, 2024). The "ordinary meaning" of undefined words is determined "in light of 'the context in which [they are] used.'" *Haba v. Commonwealth*, 73 Va. App. 277, 286 (2021) (alteration in original) (quoting *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020)). "In ascertaining such meaning, dictionary definitions may be consulted," *Peed v. Va. DOT*, 72 Va. App. 686, 696 (2021), and "[a]n undefined term in a statute may be defined using its standard dictionary definition," *Heald v. Rappahannock Elec. Coop.*, 80 Va. App. 53, 74 (2024) (alteration in original) (quoting *Eberhardt v. Commonwealth*, 74 Va. App. 23, 32 (2021)).

The term "solicit[]," is not defined by Code § 18.2-308.2:2. To solicit is "to make petition to"; "to approach with a request or plea"; "to move to action." *Solicit*, *Webster's Third New International Dictionary* (2002). And solicitation is "[t]he act or an instance of requesting or seeking to obtain something; a request or petition." *Solicitation*, *Black's Law Dictionary* (12th ed. 2024). Thus, to "solicit[] . . . any person in violating subsection M" of the statute requires that a defendant ineligible to purchase, receive, or possess a firearm request, petition, or

- 7 -

otherwise move someone to action to purchase him a firearm, where the buyer has certain knowledge and intent as per Code § 18.2-308.2:2(M). This understanding of what it means to "solicit[]" someone under Code § 18.2-308.2:2(N) comports with long-standing Virginia caselaw defining solicitation as "the accused person's parol or written efforts to activate another to commit a criminal offense," *Huffman v. Commonwealth*, 222 Va. 823, 827 (1981) (quoting *Cherry v. State*, 306 A.2d 634, 637 (Md. Ct. Spec. App. 1973)) (affirming conviction for criminal solicitation under Code § 18.2-29), or to "induce another to act," *Ford v. Commonwealth*, 10 Va. App. 224, 227 (1990) (quoting *Pedersen v. City of Richmond*, 219 Va. 1061, 1067 (1979)); *see also Commonwealth v. Murgia*, 297 Va. 310, 322 (2019) (reinstating conviction for soliciting sexual acts by a minor, in violation of Code § 18.2-374.3(D), and noting that "the gravamen of the offense" of "committing a solicitation . . . [is] the 'counselling, enticing or inducing another to commit a crime'" (quoting *Huffman*, 222 Va. at 827)); *Brooker v. Commonwealth*, 41 Va. App. 609, 614, 617 (2003) (affirming conviction for soliciting a minor to commit sexual acts, in violation of Code § 18.2-374.3(B), and noting that "[t]he gist of [solicitation] is incitement" (quoting *Branche v. Commonwealth*, 25 Va. App. 480, 490 (1997))). And it also comports with the legislature's definition of solicitation in the criminal solicitation statute, Code § 18.2-29, which provides that "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit" a felony is themselves guilty of a felony.

Here, Robles testified that appellant accompanied her to browse pawnshop firearms and that he told her "which guns to pick out and purchase." For the August 28, 2022 purchase, appellant also showed Robles a specific firearm on a website, indicated "it's this one," and then waited outside the pawnshop while Robles bought the firearm. For the November 3, 2022 purchase, Robles agreed that she purchased the AR-style firearm "at [appellant's] direction

because he was unable to." By his conduct on each occasion, appellant requested that Robles purchase a firearm and moved her to do so. And Robles' testimony established that the firearms were purchased, at least in part, for appellant as part of their "household" and "because he wasn't allowed to" buy firearms himself, as well as that Robles knew appellant was a convicted felon who "couldn't have a gun." Accordingly, a rational trier of fact could have found, beyond a reasonable doubt, that appellant solicited Robles in making straw purchases of firearms for him.

Appellant, however, argues that he could not have solicited Robles because she did not receive any benefit from him in return for purchasing the firearms. We reject this argument. Nothing in the plain language of Code § 18.2-308.2:2(N) requires a "quid pro quo" for a finding of solicitation, and the legislature clearly knows how to include language specifically requiring that a benefit be conferred if it wishes to do so. *Contrast* Code § 18.2-374.1:1(C)(ii) (criminalizing solicitation of child pornography where a person "commands, entreats, or otherwise attempts to persuade another person to send, submit, transfer or provide to him any child pornography"), *with* Code § 18.2-346.01 (providing that "[a]ny person who offers money or its equivalent to another for the purpose of engaging in [certain] sexual acts . . . and thereafter does any substantial act in furtherance thereof is guilty of solicitation of prostitution"). And as noted recently by our Supreme Court, we "may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express.'" *Canales*, ___ Va. at ___ (quoting *Jones v. Commonwealth*, 296 Va. 412, 415 (2018)).

Applying the ordinary meaning of the term "solicit[]" as used in Code § 18.2-308.2:2(N), which gives effect to the statute's "legislative purpose to interdict the availability . . . of firearms" to convicted felons, we conclude the trial court did not err in finding that appellant twice solicited Robles in purchasing firearms for him. *Mayhew*, 20 Va. App. at 490-91.

Accordingly, we affirm appellant's two convictions for violating Code § 18.2-308.2:2(N) without reaching whether he also "assist[ed]" Robles in making those purchases.

## III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*